JiDUFRESNE, Judge.
This is a suit by Steve Durkin against Quest, Inc., an engineering consulting firm, and one of its engineers, Robert Alonzo, alleging that Alonzo submitted a fraudulent flood damage assessment report to an insurance company in order to defeat plaintiffs claims for such damage. Durkin now appeals from an adverse judgment sustaining defendants’ exception of res judicata, and further imposing sanctions against him of $1,000.00 in attorney’s fees and all costs. For the following reasons, we affirm both the judgment and the imposition of sanctions.
This litigation had its origin in the May 8, 1995, torrential rains and consequent flood. At the time, plaintiff had in effect a flood insurance policy issued by State Farm Mutual Insurance Company in conjunction with the National Flood Insurance Program, a federal agency. Plaintiff made a claim under this policy for flood damage to certain personal property, but State Farm refused to pay it. He thereupon brought suit against State Farm in federal court under the policy. This matter was dismissed by way of a motion for summary judgement urged by State Farm. The trial judge [¿noted in her reasons for judgment that the policy precluded an insured from bringing suit on a claim unless a proper and detailed proof of loss statement had been made. She further noted that despite repeated written request by State Farm for this documentation, it had never been provided either prior to or during the suit.
On termination of the suit, State Farm canceled plaintiffs flood insurance at the direction of the Federal Insurance Administration. Durkin again sued State Farm in federal court, alleging this time that it had wrongfully canceled the policy. State Farm responded by claiming that the policy was canceled because Durkin had a history of submitting false and frivolous claims, the *870 most recent of which were those allegedly caused by the May 8, 1995, flood and which formed the basis of his first federal suit.
The record shows that during the course of its investigation of those latter claims, State Farm employed Quest, Inc., an engineering firm, to examine the items allegedly damaged. Robert Alonzo of that firm made the inspection and issued a report dated August 31, 1995, in which he concluded that there was no diseernable water damage to most of these items and minimal damage to the remainder. In conjunction with the second federal suit, State Farm had Mr. Alonzo sign an affidavit verifying that he had prepared the August 31,1995, report and that to the best of his knowledge and belief the information contained therein was correct. This affidavit was signed on May 15, 1997, and it and the original report were submitted to the court in the second federal suit to support State Farm’s assertions as to why it had canceled the policy. That suit also ended by way of summary judgment in favor of State Farm on January 20,1998.
Meanwhile, on July 16, 1997, Durkin sued Quest, Inc. and Robert Alonzo in state court, basically alleging that Alonzo’s report of August 31,Jsl995, was false and constituted a fraud for the benefit of State Farm, as well as a defamation. The defendants urged an exception of prescription and sought sanctions against Durkin. The exception was sustained by a judgment of October 7, 1997, but sanctions were denied. Durkin appealed that judgment, but that appeal was dismissed on March 4, 1998, due to appellant’s failure to pay costs.
On March 6,1998, two days after dismissal of the above appeal, Durkin filed the present action in state court against Quest, Inc. and Alonzo, again alleging fraud and defamation. However, this time the claim was based on the affidavit of May 15, 1997, which plaintiff contended formed a separate tort via reiteration of those allegedly false matters contained in the original August 31,1995, report. Defendants urged an exception of res judica-ta to this second state court suit and again sought sanctions. Both matters were heard by the district judge and on June 29, 1998, a judgment issued sustaining the exception, and imposing sanctions of $1,000.00 in attorneys fees and casting plaintiff for all costs. Durkin now appeals both portions of that judgment.
The law as to res judicata is set forth in La. R.S. 13:4231, as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
[[Image here]]
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
Here, the judgment in the first state suit was signed on October 7, 1997, and therefore any causes of action would be barred by the above statute if they existed before that date and arose out of the same ^transaction or occurrence. There is no question that the affidavit of May 15, 1997, was executed before the judgment was signed. Therefore, the only remaining question is whether the cause of action alleged in regard to that affidavit arose from the “same transaction or occurrence” as the prior state suit based on the report itself. In this court’s opinion, it does.
Because La. R.S. 13:4231, which came into effect in 1991, is a relatively new statute which made substantial changes in our law of res judicata, there is not yet any clear jurisprudence interpreting its use of the concept of “transaction or occurrence.” However, that phrase has long been subject to interpretation in the federal jurisprudence, especially in regard to compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure. In Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053 (5th Cir.1992) the court set forth the four part inquiry generally used to determine when a counterclaim arises out of the same transaction or occurrence as the main claim, as follows:
(1) Whether the issues of fact and law x*aised by the claim and counterclaim large *871 ly are the same; (2) whether res judicata would bar a subsequent suit on defendant’s claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiffs claim as well as defendant’s counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the counterclaim is compulsory. This standard is taken from Fed.R.Civ.P. 13(a), which provides ' that a counterclaim is compulsory if it “arises out of the transaction or occurrence which is the subject matter of the opposing party’s claim.” (Citations omitted).
While the above test deals with whether compulsory counterclaims arise out of the same transaction or occurrence, in our opinion a similar inquiry is appropriate in the context of La. R.S. 13:4231, to determine whether the claims in a second suit arise out of the same transaction or occurrence upon which the claims in a previous suit were based, so as to form the basis of an exception of res judicata.
bApplying the above analysis to the case before us, it is clear that the answers to the first, third, and fourth questions are “yes.” The threshold issues of fact and law in the first and second state court suits are whether Alonso committed a fraud and defamed plaintiff. More specifically, the basis of both actions revolves around Alonzo’s examination of Durkin’s property for damage in the May 8, 1995, flood and his subsequent report on that examination prepared for State Farm. If, as Durkin maintains, Alonzo fraudulently stated in that report that he found no flood damage to the property, or grossly underestimated that damage, all for State Farm’s benefit, that is the operative set of facts upon which both of his suits against Alonzo are based. Similarly, the relief to which he would be entitled were those allegations to be established would be based on the same law. Moreover, the evidence as to whether or not Alonzo falsified the report would be the same in both suits. Finally, it is manifest that there is a logical connection between the two suits. We thus conclude that second suit arose “out of the same transaction or occurrence” as the first, and is therefore barred by operation of La. R.S. 13:4231(2).
Plaintiff asserts to the contrary that because the original report was again used, via the affidavit, at a later date in the second federal suit, that this use constituted a separate transaction or occurrence which caused him additional damage. He fails to note, however, that when the second use of the report was made in May of 1997, in a suit in which Durkin was contesting the cancellation of his policy because of fraud, this use also arose out of the same transaction or occurrence involved in all of this litigation, ie. the examination of the property and resulting report which indicated that his underlying claims were invalid. For all of the above reasons, we therefore affirm the judgment sustaining the exception of res hjudicata.
The second issue here concerns the imposition of sanctions. Durkin asserts that his second suit was based on a reasonable assessment of the law, ie. that it arguably would not be barred by res judicata because the affidavit constituted a distinct tort. While we agree that had the two state suits been the only matters involved, we might be inclined to hold that sanctions were unwarranted. However, that is not the case.
As shown above, the operative facts relating to his claims against Alonzo and Quest, Inc. are whether the August 31, 1995, report was fraudulent in stating that there was no or little flood damage to Durkin’s property. The issue of this damage was the crux of the first federal suit, but Durkin lost that case on summary judgment because he presented no evidence to substantiate his allegations that the property was in fact flooded. This total failure of proof of loss thus gives credence, at least implicitly, to the conclusion that no such damage occurred, just as stated in Alonzo’s report.
While it is unclear whether that report was actually introduced in the first federal suit, there is no question that it was used in the second. In that second matter, State Farm asserted that Durkin’s policy was canceled because of fraud and used the report to substantiate that allegation. In spite of the gravity of the accusation and the opportunity to refute it in that case, Durkin again presented no evidence to do so, and that matter *872 also ended in summary judgment against him.
While the report was still subject to attack in the pending second federal suit, Durkin instead chose to do so by filing his first state suit. The affidavit and the report were introduced in the second federal suit several months before judgment was rendered in the state matter, but Durkin did knot amend his state pleadings to include this alleged new tort. When the state suit was dismissed on an exception of prescription, an appeal was taken but allowed to lapse. Durkin then brought the present suit.
After a hearing on both the exception and the sanctions issue at which Alonzo presented the history of the entire dispute, the trial judge stated that:
I find that this matter has been previously dealt with and disposed of appropriately, previously by Judge Murphy, with that [first state] law suit. It seems to be duplicitous to me. And according to this record it appears that what you have been doing is an abuse of the judicial process. You have filed law suit after law suit after law suit. And apparently being dissatisfied with the outcome of those law suits, you still persist in filing duplicitous law suits. And I think that this needs to come to an end.
I’m granting the exception of res judicata. And there has been a request that you be sanctioned for filing a meritless law suit. I’m granting that request. And I’m going to order you to pay all court costs, and I’m awarding attorney’s fees of one thousand dollars.
Implicit in the above findings is the conclusion that the present suit was filed to harass the defendants, a practice sanctionable under La.Code Civ. Pro., Art. 868.
The standard of review of the imposition of sanctions is twofold: review of the facts underlying the determination that conduct is sanctionable is whether those facts are manifestly erroneous, while review of the nature or amount of such sanctions is whether the trial judge abused his discretion, Penton v. Clarkson, 93-0657 (La.App. 1st Cir. 3/11/94), 633 So.2d 918. Considering all of the circumstances involved in this protracted litigation, we discern neither manifest error in the factual finding that the suit was intended to harass, nor abuse of discretion in the amount of the sanctions imposed.
As to defendants’ answer to this appeal asserting that the award was too low, we reject that claim as well, on the above grounds that we find no feabuse of discretion in the $1,000.00 award. The defendants also seek further penalties on grounds that this appeal is frivolous, arguing basically that if the suit is deemed sanctionable, then it necessarily follows that the appeal must also be frivolous. We reject this argument. Although we have affirmed the imposition of the sanctions, we nonetheless deem appellant’s arguments as to why it was error for the trial judge to have imposed them sufficiently cogent so as to refute the assertion that the appeal was groundless.
For the foregoing reasons, the judgment of the trial court in this matter is hereby affirmed.

AFFIRMED.